IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARCELO EDDY VACAFLOR,**<br>Plaintiff<br><br>v.<br><br>**THE PENNSYLVANIA STATE UNIVERSITY, PENNSYLVANIA COLLEGE OF TECHNOLOGY, SUSAN SWANK-CASCHERA**, Individually,<br>**HEATHER DORMAN** Individually,<br>Defendants | **Case No.** _____<br><br>Jury Trial Demanded<br><br>Filed Electronically |

## COMPLAINT

AND NOW comes Plaintiff, Marcelo Eddy Vacaflor, by and through his undersigned attorneys at Strokoff & Cowden, P.C., and hereby brings this action against the Defendants, the Pennsylvania College of Technology/the Pennsylvania State University, Susan Swank-Caschera and Heather Dorman and as for his causes of action states as follows:

### PARTIES

1.     The Plaintiff, Marcelo Eddy Vacaflor, is an adult individual who resides at 402 Glyndon Street, SE, Vienna, VA, but at all times relevant to this Complaint resided at 2945 Fairmont Street, Falls Church, VA  22042.

2.     Defendant, The Pennsylvania State University (hereinafter referred to as "Penn State"), is a state-related public institution of Pennsylvania's Commonwealth System of Higher Education and maintains

its primary place of operations at 201 Old Main, University Park, Centre County, Pennsylvania.

3.      Penn State is a "college, university, or other postsecondary institution, or a public system of higher education" that receives "federal financial assistance" as set forth by Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d et seq.

4.      Defendant, Pennsylvania College of Technology (hereinafter referred to as "Penn College") is a technical college and a special mission affiliate college of Penn State, and maintains its primary place of operations at One College Avenue, Williamsport, Lycoming County, Pennsylvania.

5.      Defendant Penn College is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a wholly controlled affiliate of Penn State.

6.      Defendant, Susan Swank-Caschera, is an adult individual who maintains a business address of One College Avenue, Williamsport, Lycoming County, Pennsylvania. At all times relevant to this Complaint, Ms. Swank-Caschera was an instructor and faculty member and the Interim Director for the Physician Assistant Program (hereinafter "P.A. Program") at Penn College.

7.      Defendant, Heather Dorman, is an adult individual who maintains a business address of One College Avenue, Williamsport,

2

Lycoming County, Pennsylvania. At all times relevant to this Complaint, Ms. Dorman was the Clinical Director in the P.A. Program at Penn College.

8. Defendants, Swank-Caschera and Dorman are referred to herein collectively as the Individual Defendants.

## JURISDICTION AND VENUE

9. In this Complaint, Plaintiff asserts claims of illegal discrimination against all Defendants on the basis of his Hispanic race; being of Bolivian descent, by denying him the full and equal enjoyment of the benefits of and participation in Defendants' system of higher education. His claims arise pursuant to 42 U.S.C. § 1981, the Due Process Clause and Equal Protection Clause of the 14th Amendment under the United States Constitution, 42 U.S.C. § 1985 and Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d et seq. (hereinafter referred to as "Title VI").

10. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(1), (3) and (4) and the aforementioned statutory provisions.

11. Venue is invoked pursuant to 28 U.S.C. § 1391(b), because the acts of discrimination giving rise to Plaintiff's claims were committed in this judicial district and because Defendants are located in this judicial district.

3

## STATEMENT OF FACTS

12.    Plaintiff, Marcelo Eddy Vacaflor, is a Hispanic male of Bolivian descent born in 1971. He is also a husband and father to 3 children.

13.    He has since 2006 been certified by the National Board of Surgical Technology and Surgical Assisting as a Surgical Technologist and since August 2011 has been certified as a Surgical Assistant by the National Assistant at Surgery Council, Inc. He has been working as a Surgical First Assistant at Inova Fairfax Hospital in Virginia since about 2007.

14.    In the Fall of 2008, Mr. Vacaflor enrolled in the P.A. Program at Penn College, which is a Bachelors' Degree program consisting of approximately eight semesters and two summer sessions to be completed in the junior and senior years.

15.    Upon enrollment, Mr. Vacaflor was approved to transfer approximately 32 credits from a previous institution so that he enrolled in the P.A. Program as a sophomore, with approximately 6 semesters and two summer sessions of course work to complete. He had a targeted graduation date of Summer 2011.

16.    Beginning the Fall of 2008, Mr. Vacaflor traveled from his home in Falls Church, Northern Virginia to Williamsport to attend Penn College as a full-time student.

4

17.     After his first three semesters in the P.A. Program in the Fall of 2009, Mr. Vacaflor had a cumulative grade point average (GPA) of 3.13.

18.     In Spring 2010, Mr. Vacaflor's junior year, Susan Swank-Caschera taught Mr. Vacaflor's Psychopathology class.  At the close of the semester, she assigned a failing grade to Mr. Vacaflor's final project, falsely deciding that Mr. Vacaflor had plagiarized his work.

19.     Ms. Swank-Caschera unilaterally assigned a failing grade to Mr. Vacaflor's project without discussing her allegations with Mr. Vacaflor or giving him a chance to respond.  Mr. Vacaflor appealed.

20.     On appeal, the then Program Director, Joseph Mileto, called Mr. Vacaflor into his office and told him that the reason he received a failing grade was because Ms. Swank-Caschera believed he had plagiarized his work.  After meeting with Mr. Vacaflor, Mr. Mileto found that Ms. Swank-Caschera's allegations lacked merit and Mr. Mileto reversed the grade.

21.     Ms. Swank-Caschera still assigned a failing grade to the project, falsely claiming that Mr. Vacaflor had submitted the project after the deadline.  After investigation Mr. Mileto, again, assigned a passing grade to the assignment. Mr. Vacaflor received a final grade of "B" for that class.

22.     Mr. Mileto left the institution not long thereafter and Ms. Swank-Caschera was appointed to be the Interim Program Director.

23.     Throughout his enrollment in the P.A. Program, many if not all of his professors, used hypotheticals in their teaching methods including Ms. Swank-Caschera and Heather Dorman, another instructor at Penn College.

24.     However, Ms. Swank-Caschera's and Ms. Dorman's clinical/diagnostic hypotheticals commonly contained gratuitous facts indicative of racial and ethnic biases toward non-whites, which had nothing whatever to do with diagnosing the problem. Among them were hypotheticals like the following:

> "Black female presents to the Emergency Room with right upper quadrant pain after eating fried chicken...."

> "12 y/o Black male is brought to the primary care office by his aunt. He is new to the practice moving to the area from Philadelphia after his mother was incarcerated on drug charges".

25.     Ms. Swank-Caschera and Ms. Dorman made clear through these overtly racial stereotyped comments, that Penn College was an unwelcoming environment for people of color like Mr. Vacaflor.

26.     As the Interim Director of the P.A. Program, Ms. Swank-Caschera not only engaged in these discriminatory behaviors but also failed to correct or reprimand other instructors in the program who promulgated virtually the same or similar racially based animus.

27.     By the end of the summer session after his junior year in 2010, Mr. Vacaflor entered his senior year carrying a cumulative G.P.A. of 2.93.

6

28.     The senior year is considered to be the "Clinical Year," where students complete internships at various clinical sites in Pennsylvania and other surrounding states.  Students are permitted to indicate their top three preferences with regard to geographic area by submitting a form. (Attached hereto as **Exhibit A**).

29.     Mr. Vacaflor had submitted his form on or about January 18, 2010 indicating that his first choices, in order, were 1) Virginia State; 2) Zone 16 – Chambersburg/Waynesboro/Gettysburg and Hagerstown, MD; and 3) Zone 1 – Williamsport/Montoursville/Lock Haven/Montgomery/White Deer/Lewisburg.

30.     Around the same time, Mr. Vacaflor wrote to Clinical Directors, Paula Holmes and Heather Dorman requesting that his status as a married father of three be considered in his clinical site assignments.

31.     In the Fall of 2010, Mr. Vacaflor was enrolled in a Family Practice Internship, an Obstetrics and Gynecology Internship and a Pediatrics Internship.

32.     Paula Holmes was Mr. Vacaflor's instructor for all three of the above mentioned Internships in the Fall of 2010.

33.     Ms. Holmes was able to make clinical site assignments in the first two of Mr. Vacaflor's three preferred site locations.

34.     At the end of each clinical rotation, students are required to take and pass an "end-of-rotation" exam.  A 75% on the exam is passing.

7

35. In accord with the Student Handbook, students who take the end-of-rotation exam and do not receive a passing grade of 75% or higher are required to take another exam within two weeks of the initial examination. (Excerpts from the Student Handbook are attached hereto as **Exhibit B**).

36. In accord with the Student Handbook students that score below a "C" or 75% on any examination are also required to meet with the instructor to review the examination and remediate.

37. A student may remediate no more than a total of two end-of-rotation exams during the clinical year. Failure of the remediation exam is a failure of the clinical rotation.

38. Typically, instructors meet with students to review their end-of-rotation exams. In many cases the raw scores of the end-of-rotation exams are adjusted upward after such review, when a student can rationalize their answers and/or demonstrate applied comprehension relating to a question on which s/he initially scored unsuccessfully.

39. Mr. Vacaflor met with Ms. Holmes immediately after taking all of his end-of-rotation exams in Fall 2010.

40. He received a "B" for his Obstetrics and Gynecology Internship and a "C" for his Pediatrics Internship.

41. Mr. Vacaflor received a score below 75% on his end-of-rotation exam for his Family Practice Internship.

8

42.     Ms. Holmes and Mr. Vacaflor agreed that he would retake the Family Practice in the Summer of 2011.

43.     Through the discriminatory actions that came thereafter, Mr. Vacaflor was excluded from the ability to remediate the Family Practice Internship.

44.     In the Spring of 2011, Mr. Vacaflor was enrolled in a Psychiatry Internship under the instruction and advisement of Ms. Dorman.

45.     The Psychiatry Internship began on or about December 27, 2010, and ended on or about February 3, 2011.

46.     Ms. Dorman assigned Mr. Vacaflor to complete his Psychiatry Internship at a hospital in Warren, PA.  Warren, PA was over eight hours' drive from Mr. Vacaflor's home in Northern Virginia.

47.     Ms. Dorman had also assigned Cuba, New York as the site for Mr. Vacaflor's Emergency Medicine Internship which was to begin later in the Spring of 2011, and which was approximately 9 hours from Mr. Vacaflor's home.

48.     When he learned of the site assignment for the Psychiatry Internship, Mr. Vacaflor went to Ms. Dorman personally and begged to be reassigned to a site that would allow him to commute home on the weekends so that his wife could work and he could be with his three young children whose ages at the time were 5, 4 and 2.

49.     Ms. Dorman denied his request.

9

50.     It is believed and averred that Ms. Dorman had, however, granted the requests of one (Caucasian) student to change her clinical site assignment so that she could maintain close proximity to another student in the program with whom she was romantically involved.

51.     Mr. Vacaflor did not receive any responses from either Ms. Swank-Caschera or Ms. Dorman.

52.     Early in the spring semester of 2011, Ms. Swank-Caschera chastised a non-white, foreign student for asking a question about being graded on grammar, to which Ms. Swank-Caschera publicly responded, "well since English isn't your primary language, you need to work harder."

53.     English is not Mr. Vacaflor's first language and after hearing that comment, he felt intimidated on the basis of his national origin and status as a native Spanish-speaker not to speak out.

54.     On February 3, 2011, Mr. Vacaflor took the end-of-rotation Psychiatry exam.

55.     Some of the Psychiatry end-of-rotation exam takers were able to review their exams, but no one met with Mr. Vacaflor to review his exam.

56.     It is believed and averred that Caucasian students were permitted to review their Psychiatry exams and were able to upwardly adjust their raw scores.

10

57.     On or about February 7, 2011, Mr. Vacaflor began his Internal Medicine Internship in Fairfax, VA, under the instruction of Ms. Holmes.

58.     On February 15, 2011, Ms. Dorman advised Mr. Vacaflor that he had scored a 71% on his Psychiatry end-of-rotation exam.

59.     In response, Mr. Vacaflor requested an opportunity to review the exam with her like the majority of his classmates had done.  She denied his request stating that she had already performed the review without his input.

60.     Ms. Dorman also advised Mr. Vacaflor that a 50-question remedial exam would be given on February 28, 2011, at 11 a.m., and that he would have one hour beforehand to review the original exam.

61.     Ms. Dorman was not present on February 28, 2011 to review the original exam with Mr. Vacaflor when he arrived to take the remedial exam.

62.     The remedial exam was taken via computer and proctored by Ms. Holmes.

63.     Mr. Vacaflor began the exam late after experiencing some technical difficulty.  When he reached question #44, the program (Angel) unexpectedly shut down with several minutes still remaining to complete the exam.

64. When the program resumed, Mr. Vacaflor returned to question #44 to finish the exam.

65. However, when Mr. Vacaflor finished question #50, he was presented with a question #51. Then, he was presented with a question #52; and so on. At question #61 Mr. Vacaflor went to the proctor, Ms. Holmes, who determined that instead of having only 50 questions, the exam was constructed with 64 questions.

66. Ms. Dorman was not available to advise, grade or review the exam with Mr. Vacaflor, or provide any explanation for the existence of 14 extra questions.

67. Mr. Vacaflor attempted through telephone messages and emails to reach Ms. Dorman through the first week of March 2011.

68. Both Ms. Dorman's voicemail box and her email inbox were full, rendering Mr. Vacaflor's messages undeliverable. No one responded to any of Mr. Vacaflor's messages.

69. On March 4, 2011, Mr. Vacaflor wrote an email to Ms. Holmes seeking guidance and inquiring about the remediation score. He got no response.

70. At the time, Mr. Vacaflor was performing well in his Internal Medicine Internship evidencing his qualification to continue in the P.A. Program.

71.   On March 10, 2011, Mr. Vacaflor was preparing to leave his home to travel the four hours to Williamsport in advance of his end-of-rotation exam. At 3:15 p.m. Ms. Swank-Caschera wrote an email to him stating, "Please call me prior to leaving for Williamsport." (**Exhibit C**).

72.   A few minutes later Ms. Swank-Caschera called Mr. Vacaflor on the phone and advised him that he should not come to Williamsport for his end-of-rotation exam because he had failed the remedial exam he took on February 28, 2011, and as a result he was dismissed from the P.A. Program.

73.   On March 15, 2011, Ms. Dorman and Ms. Holmes attended the appeal meeting but Ms. Swank-Caschera came to the meeting only briefly.

74.   During the meeting Mr. Vacaflor described the computer-based delays and the shut-down he encountered during the February 28 exam along with the existence of 14 additional questions. He described the detrimental effect those interruptions and distractions and the timing problems the added questions had caused, all of which were mitigating factors.

75.   On March 16, 2011, Ms. Dorman advised Mr. Vacaflor that his grade of "F" would stand.

76.   Again, Mr. Vacaflor appealed, this time to the Dean, Sharon Waters.

13

77. Mr. Vacaflor met with Dean Waters on March 23, 2011, requesting review of Ms. Dorman's decision and that he be given a remedial exam under normal conditions and that the grading be conducted under normal conditions and that he be permitted to review with his instructor like other students; i.e., be treated fairly.

78. By letter dated March 28, 2011, Dean Waters informed Mr. Vacaflor that he would be provided another opportunity to retake his remediation exam on April 1, 2011.

79. The second remedial exam was constructed by Ms. Dorman.

80. As Mr. Vacaflor began to answer the questions, he became acutely aware that the exam had been written at such a level of difficulty as to expressly result in his failure.

81. Then, after answering about 20 questions, the computer system shut down - again.

82. Eventually, Mr. Vacaflor took the entire exam.

83. The exam Ms. Dorman created was disparately more difficult than was necessary to evaluate Mr. Vacaflor's knowledge of the subject matter.

84. No Caucasian student had taken a remedial exam as difficult as the one created by Ms. Dorman.

85.     About half-an-hour later, Ms. Dorman, informed Mr. Vacaflor that his score was a 69%.

86.     For the very first time, Ms. Dorman went over the exam with Mr. Vacaflor, but did not adjust any of his scores.

87.     By letter dated April 4, 2011, Dean Waters informed Mr. Vacaflor that "you have been informed by Heather Dorman that you did not pass the exam...." and quoting from the Student Handbook advised Mr. Vacaflor that students who fail two clinical internships will be terminated from the program.  (The April 4, 2011 letter from Dean Waters is attached hereto as **Exhibit D**).

88.     Mr. Vacaflor appealed Dean Waters' decision to Assistant Vice President Carolyn Strickland, alleging that Ms. Dorman and Ms. Swank-Caschera had discriminated against him on the basis of his race and national origin to bring about his dismissal.

89.     Despite Mr. Vacaflor's request on appeal that Penn College review his exams to determine their fairness, it is believed and averred that no legitimate independent assessment was conducted.

90.     All of Mr. Vacaflor's internal appeals to the Penn College Administration were denied.

91.     It is believed and averred that no "independent assessment" was undertaken to determine whether the remedial exams were created or graded fairly.

92.    After making inquiry to several institutions with similar P.A. programs, Mr. Vacaflor has learned that he will not be able to transfer or seek admittance into other similar P.A. Programs, and will have to start all over again.

93.    Mr. Vacaflor has exhausted his administrative remedies and Defendant Penn College has unlawfully failed and refused to reinstate Mr. Vacaflor into the P.A. Program.

94.    Mr. Vacaflor paid tuition and fees to attend Penn College, which in 2008-2009 totaled in excess of $14,800.00; in 2009-2010 totaled in excess of $15,600.00; and in 2010-2011 totaled in excess of $16,300.00

95.    Although currently employed as a Surgical First Assistant, Mr. Vacaflor continues to suffer a wage loss of approximately $20,000.00 per year less as a result of his discriminatory dismissal from the P.A. Program at Penn College.

## COUNT I
### 42 U.S.C. § 1981 - CONTRACT DISCRIMINATION
### (Against the Individual Defendants)

96.    Paragraphs 1 through 95 above are incorporated herein by reference as if set forth at length.

97.    Mr. Vacaflor has the same rights and ability to enjoy all benefits and privileges as English-speaking Caucasians in his enrollment as a student at Penn College.  42 U.S.C. §1981.

16

98. Mr. Vacaflor was the victim of intentional discrimination based on his Hispanic race and national origin with regard to his contract with Defendants in violation of 42 U.S.C. § 1981.

99. But for the discriminatory actions of the individual Defendants, Mr. Vacaflor was qualified to continue in the P.A. Program.

100. The individual Defendants were motivated by racial and ethnic animus when they failed to provide Mr. Vacaflor with all the same benefits and privileges enjoyed by white, English-speaking students enrolled in the P.A. Program at Penn College.

101. As a result of Defendants' overtly racially biased actions, Mr. Vacaflor has had his reputation damaged and standing in the community lowered, has suffered and continues to suffer pain, humiliation, ridicule and embarrassment, has endured public humiliation, ridicule and embarrassment before his family, friends, academic professionals, employers and classmates and has sustained heavy academic and economic losses.

102. Mr. Vacaflor has and continues to suffer irreparable harm as a result of the Defendants' violation of his protected federal rights.

WHEREFORE, Plaintiff, Marcelo Eddy Vacaflor, respectfully requests this Honorable Court to 1) enter a declaratory judgment in his favor, that Defendants' discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint have violated and continue to violate Mr. Vacaflor's federal rights; 2) enjoin Defendants from

17

continuing their discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint that have operated to the detriment of Mr. Vacaflor on the basis of his Hispanic race and national origin; 3) mandate Defendants reinstate Mr. Vacaflor and allow him to continue and complete his academic career at Penn College; and 4) enter judgment in his favor, jointly and severally, and against Defendants, together with compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT II
### 42 U.S.C. §1983 – DUE PROCESS DISCRIMINATION
### (Against Individual Defendants)

103.   Paragraphs 1 through 102 above are incorporated herein by reference as if set forth at length.

104.   Mr. Vacaflor has interest in continuing his education protected by the 14th Amendment of the United States Constitution.

105.   As a result of Defendants' actions, Mr. Vacaflor was dismissed from the P.A. Program for arbitrary and capricious reasons motivated by bad faith and ill will unrelated to an unbiased evaluation of Mr. Vacaflor's academic performance.

18

106. As a result of Defendants' actions, Mr. Vacaflor has had his reputation damaged and standing in the community lowered, has suffered and continues to suffer pain, humiliation, ridicule and embarrassment, has endured public humiliation, ridicule and embarrassment before his family, friends, academic professionals, employers and classmates and has sustained heavy academic and economic losses.

107. Mr. Vacaflor has and continues to suffer irreparable harm as a result of the Defendants' violation of his protected federal rights.

WHEREFORE, Marcelo Eddy Vacaflor respectfully requests this Honorable Court to 1) enter a declaratory judgment in his favor, that Defendants' discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint have violated and continue to violate Mr. Vacaflor's federal rights; 2) enjoin Defendants from continuing their discriminatory actions, policies, practices and procedures set forth in this Complaint that have operated to Mr. Vacaflor's detriment on the basis of his Hispanic race and national origin; 3) mandate Defendants reinstate Mr. Vacaflor and allow him to continue and complete his academic career at Defendant Penn College; and 4) enter judgment in his favor, jointly and severally, and against Defendants, together with compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

19

## COUNT III
## 42 U.S.C. § 1983 - EQUAL PROTECTION
## DISCRIMINATION
### (Against All Defendants)

108.   Paragraphs 1 through 107 above are incorporated herein by reference as if set forth at length.

109.   The 14th Amendment to the United States Constitution provides Mr. Vacaflor with rights such that no state shall deny to any person within its jurisdiction equal protection of the laws.

110.   Defendants violated Mr. Vacaflor's 14th Amendment equal protection rights by discriminating against him on the basis of his Hispanic race and national origin.

111.   At all times relevant and material to this Complaint, Mr. Vacaflor was a member of a protected class.

112.   At all times relevant and material to this Complaint, Defendants treated Mr. Vacaflor differently from his similarly-situated classmates who are not Hispanic.

113.   As a result of Defendants' actions, Mr. Vacaflor has had his reputation damaged and standing in the community lowered, has suffered and continues to suffer pain, humiliation, ridicule and embarrassment, has endured public humiliation, ridicule and embarrassment before his family, friends, academic professionals, employers and classmates and has sustained heavy academic and economic losses.

20

114.   Mr. Vacaflor has and continues to suffer irreparable harm as a result of the Defendants' violation of his protected federal rights.

WHEREFORE, Marcelo Eddy Vacaflor respectfully requests this Honorable Court to 1) enter a declaratory judgment in his favor, that Defendants' discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint have violated and continue to violate Mr. Vacaflor's federal rights; 2) enjoin Defendants from continuing their discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint that have operated and continue to operate to Mr. Vacaflor's detriment on the basis of his Hispanic race and national origin; 3) mandate Defendants reinstate Mr. Vacaflor and allow him to continue and complete his academic career at Defendant Penn College, and 4) enter judgment in his favor, jointly and severally, and against Defendants, together with compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT IV
## 42 U.S.C. §1985(3)
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### (Against Individual Defendants)

115.   Paragraphs 1 through 114 above are incorporated herein by reference as if more fully set forth at length.

21

116.   It is believed and therefore averred that the Individual Defendant's consulted with one another about Mr. Vacaflor end-of-rotation, exam, his first remedial exam, his initial dismissal, the appeal thereafter, his second remedial exam, and his subsequent internal appeals.

117.   It is believed and therefore averred that the Individual Defendants entered into an agreement to interfere with Mr. Vacaflor's continuation, advancement and/or completion of the P.A. Program at Penn College.

118.   It is believed and therefore averred that the Individual Defendants' actions were motivated by a discriminatory animus against Mr. Vacaflor as a person of Hispanic race/national origin.

119.   It is believed and therefore averred that the Individual Defendants acted in furtherance of their agreement by failing to provide Mr. Vacaflor with the individual review of his exams, intentionally creating and approving a remedial exam that was nearly 25% longer than allowed or expected and thereafter creating and approving an exam that was disparately more difficult than was necessary to remediate.

120.   As a result of Defendants' actions, Mr. Vacaflor has had his reputation damaged and standing in the community lowered, has suffered and continues to suffer pain, humiliation, ridicule and embarrassment, has endured public humiliation, ridicule and

22

embarrassment before his family, friends, academic professionals, employers and classmates and has sustained heavy academic and economic losses.

121. Mr. Vacaflor has and continues to suffer irreparable harm as a result of the Defendants' violation of his protected federal rights.

WHEREFORE, Marcelo Eddy Vacaflor respectfully requests this Honorable Court to 1) enter a declaratory judgment in his favor, that Defendants' discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint have violated and continue to violate Mr. Vacaflor's federal rights; 2) enjoin Defendants from continuing their discriminatory actions, policies, practices and procedures set forth in this Complaint that have operated to Mr. Vacaflor's detriment on the basis of his Hispanic race and national origin; 3) mandate Defendants reinstate Mr. Vacaflor and allow him to continue and complete his academic career at Defendant Penn College; and 4) enter judgment in his favor, jointly and severally, and against Defendants, together with compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT V
## TITLE VI CIVIL RIGHTS VIOLATION
## DISCRIMINATION
### (Against All Defendants)

122.   Paragraphs 1 through 121 above are incorporated herein by reference as if set forth at length.

123.   At all times relevant and material to this Complaint, Defendants were "college, university, or other postsecondary institution, or a public system of higher education" that receives "federal financial assistance" as set forth by Title VI.

124.   Mr. Vacaflor was subjected to a racial and ethnic discrimination, harassment and intimidation on the basis of his Hispanic race and national origin in violation of Title VI.

125.   Defendants discriminated against Mr. Vacaflor in violation of his civil rights under Title VI by treating him differently than his classmates because of his Hispanic race and national origin.

126.   Mr. Vacaflor had placed Defendants on notice that he was being subjected to racial discrimination, harassment on the basis of his Hispanic race and national origin by filing a complaint of discrimination with the administration of Defendant Penn College.

127.   Defendants knew or should have known about the racial discrimination, harassment and intimidation Mr. Vacaflor was subjected to and failed to take appropriate remedial action.

24

128.  Defendants' racial discrimination, harassment and intimidation towards Mr. Vacaflor was intentional, malicious and in reckless indifference to his protected federal rights.

129.  Defendants' failure to maintain an educational environment free of racial discrimination, harassment and intimidation and a failure to take prompt remedial and comprehensive action to address the racially hostile environment to which Mr. Vacaflor was subjected was intentional, malicious and in reckless indifference to his protected federal rights.

130.  At all times relevant and material to this Complaint, Defendants treated Mr. Vacaflor differently from his similarly situated classmates who are not Hispanic.

131.  As a result of Defendants' actions, Mr. Vacaflor has had his reputation damaged and standing in the community lowered, has suffered and continues to suffer pain, humiliation, ridicule and embarrassment, has endured public humiliation, ridicule and embarrassment before his family, friends, academic professionals and classmates and has sustained heavy academic and economic losses.

WHEREFORE, Marcelo Eddy Vacaflor respectfully requests this Honorable Court to 1) enter a declaratory judgment in his favor, that Defendants' discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint have violated and continue to violate

Mr. Vacaflor's federal rights, 2) enjoin Defendants from continuing their discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint that have operated and continue to operate in harassing Mr. Vacaflor on the basis of his Hispanic race and national origin, 3) mandate Defendants reinstate Mr. Vacaflor and allow him to continue and complete his academic career at Defendant Penn College and 4) enter judgment in his favor, jointly and severally, and against Defendants, together with compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT VI
### TITLE VI CIVIL RIGHTS VIOLATION
### HOSTILE ENVIRONMENT
### (Against All Defendants)

132. Paragraphs 1 through 131 above are incorporated herein by reference as if set forth at length.

133. Mr. Vacaflor was subjected to a racially hostile environment on the basis of his Hispanic race and national origin in violation of Title VI.

134. Defendants created a racially hostile environment for Mr. Vacaflor in violation of his civil rights under Title VI by failing to protect him from racial discrimination, and harassment on the basis of his Hispanic race and national origin.

26

135. The racial discrimination, harassment and intimidation Mr. Vacaflor was subjected to was pervasive and regular.

136. The racially hostile environment to which Mr. Vacaflor was subjected would have detrimentally affected a reasonable person in his position.

137. Defendants' failure to maintain an educational environment free of racial discrimination, harassment and intimidation and a failure to take prompt remedial action to address the hostile environment to which Mr. Vacaflor was subjected was intentional, malicious and in reckless indifference to his protected federal rights.

WHEREFORE, Mr. Vacaflor respectfully requests this Honorable Court to 1) enter a declaratory judgment in his favor, that Defendants' discriminatory actions, policies, practices and procedures set forth in this Complaint have violated and continue to violate Mr. Vacaflor federal and state rights, 2) enjoin Defendants from continuing their discriminatory and retaliatory actions, policies, practices and procedures set forth in this Complaint that have operated and continue to operate in threatening and intimidating Mr. Vacaflor on the basis of his Hispanic race and national origin, 3) mandate Defendants reinstate Mr. Vacaflor and allow him to continue and complete his academic career at Penn College and 4) enter judgment in his favor, jointly and severally, and against Defendants, together with compensatory damages, punitive damages, reasonable attorneys' fees

and costs, and any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT VII
## BREACH OF CONTRACT
### (Against All Defendants)

138.  Paragraphs 1 through 137 above are incorporated herein by reference as if set forth at length.

139.  Mr. Vacaflor by virtue of being accepted into the P.A. Program at Penn College had a reasonable expectation that he would receive a degree in exchange for paying the necessary tuition and performing his work in a satisfactory manner.

140.  Defendants failed to meet their contractual obligations to Mr. Vacaflor with respect to providing him with the required good faith or fairness in testing advisement, remediation and academic appeal.  (**Exhibit B**).

141.  Defendants failed to meet their contractual obligation to perform a meaningful and honest investigation into Mr. Vacaflor's claims that his remedial exams were designed for the express purpose to bring about his failure.

142.  In so doing, Defendants violated their own procedures.

28

143. Defendants' ratification of the decision to dismiss Mr. Vacaflor from the P.A. Program was a sham undertaken to ratify an arbitrary decision that had already been made.

144. As a result of Defendants' actions, Mr. Vacaflor is unable to transfer into similar P.A. Programs or finish the degree he sought out to attain.

145. As a result of Defendants' actions Mr. Vacaflor has had his reputation damaged and his earning power is significantly diminished and has sustained heavy academic and economic losses.

WHEREFORE, due to Defendants' material breach Mr. Vacaflor respectfully requests this Honorable Court 1) to mandate Defendants reinstate Mr. Vacaflor and allow him to continue and complete his academic career at Defendant Penn College; 2) enter judgment in his favor, jointly and severally, and against Defendants, together with compensatory damages, punitive damages, reasonable attorneys' fees and costs; and 3) any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise,

Plaintiff respectfully demand a trial by jury.

Respectfully submitted,

STROKOFF & COWDEN, P.C.

By: _____
Jennifer A. Nachamkin, Esq.
I.D. No. 200931
132 State Street
Harrisburg, PA 17101
(717) 233-5353

DATE:       3/5/13