IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCELO EDDY VACAFLOR, | : | Case No. 4:13-CV-00601 |
| Plaintiff, | : | |
| v. | : | (Judge Brann) |
| THE PENNSYLVANIA STATE UNIVERSITY, PENNSYLVANIA COLLEGE OF TECHNOLOGY, SUSAN SWANK-CASCHERA, HEATHER DORMAN, | : | |
| Defendants. | : | |

**MEMORANDUM**
July 21, 2014

Before the Court is Defendant The Pennsylvania State University's ("Penn State") Motion to Dismiss for Failure to State a Claim (ECF No. 17) in response to Plaintiff's Amended Complaint (ECF No. 14).[1]  Plaintiff's Complaint states seven (7) counts, four of which pertain to Penn State: racial discrimination in violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution via 42 U.S.C. § 1983 (Count III); a discrimination claim under Title

---

[1] A prior Motion to Dismiss filed by Penn State and another Motion to Dismiss filed by the other Defendants are also before the Court (ECF Nos. 8, 9).  Because these filings pertain to the Plaintiff's original Complaint (ECF No. 1), rather than the subsequent Amended Complaint (ECF No. 14), they are denied and dismissed as moot.

1

VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* ("Title VI") (Count V); a Title VI hostile environment claim (Count VI); and, a breach of contract claim (Count VII). See generally Pl.'s Am. Compl., July 10, 2013, ECF No. 14 [hereinafter Compl.].

Plaintiff does not allege any specific acts by Penn State or Penn State employees in this matter. Rather, Plaintiff seeks to pierce the corporate veil between Penn State and Defendant Pennsylvania College of Technology ("Penn College"), based principally on the fact that Penn College is a statutorily designated affiliate of Penn State and that Penn State's logo appears on the Penn College student manual. For the reasons discussed herein, Defendant Penn State's Motion to Dismiss is granted.

**I.    INTRODUCTION**

    **A.    Facts as Alleged in Complaint**

Plaintiff Marcelo Eddy Vacaflor ("Vacaflor" or "Plaintiff") is a Hispanic man of Bolivian descent. Compl., ¶ 13. In the fall or 2008, Vacaflor enrolled in the Physician Assistant Program (P.A. Program) offered at Pennsylvania College of Technology in Williamsport, Pennsylvania. Id., ¶¶ 15, 16, 18. The P.A. Program consists of eight semesters and two summer sessions, which include clinical internships in the field with corresponding examinations. Id., ¶¶ 15, 31.

Vacaflor successfully transferred approximately thirty-two (32) credits from prior education such that he had an accelerated target graduation date of Summer 2011. Id., ¶ 17.

Each week beginning in autumn 2008, Vacaflor traveled from his home in Falls Church, Virginia to Williamsport to attend classes as a full-time student. Id., ¶18.  Over the course of the next four semesters, Vacaflor alleges he experienced several forms of harassment from Penn College faculty and administrators including: plagiarism accusations (Compl., ¶ 23) and an accompanying failing grade he deems erroneous (Id., ¶ 24); enduring alleged discriminatory medical hypotheticals in class based on racial and ethnic biases (Id., ¶ 27); not being afforded the same post-examination instructor review opportunities as other students (Id., ¶ 63); being denied a more accommodating internship location to be closer to his family when other students were afforded requested accommodations (Id., ¶¶ 32, 50–55); and, being subject to allegedly more difficult remedial examinations than the other students were provided (Id., ¶¶ 69–91).  Notably, all of these alleged acts were performed by either Defendant Susan Swank-Caschera, Heather Dorman, or another representative of Penn College.  None of the specific allegations are attributed to Penn State, and no person with a direct relationship to Penn State appears in the Complaint.

Following his receipt of failing grades in several examinations and corresponding requirements, Vacaflor was dismissed from the PA Program. Compl., ¶ 92; Ex. D. Vacaflor pursued an administrative appeal alleging discrimination and unfairness of the remedial examination process, which was denied. Vacaflor subsequently filed the impending action.

### B.   Relationship of Institutional Defendants

The Pennsylvania State University was originally incorporated as "The Farmers High School of Pennsylvania" in 1855. See Act of Feb. 22, 1855, P.L. 46, as amended, 24 P.S. §§ 2531, *et seq.*; Roy v. Pennsylvania State Univ., 568 A.2d 751, 753 (Pa. Commw. Ct. 1990). What is now Penn State was designated as Pennsylvania's land grant institution under the Morrill Act of 1862, 7 U.S.C. § 301, *et seq.* Pennsylvania State Univ. v. Derry Tp. Sch. Dist., 731 A.2d 1272, 1274 (Pa. 1999). Penn State is a "State-related university and an instrumentality of the Commonwealth within the Commonwealth System of Higher Education." 24 P.S. § 2510-503(7).

Pennsylvania College of Technology, by contrast, was established in 1989 by the Pennsylvania College of Technology Act, 24 P.S. § 2510-501, *et seq.* ("the Act"). The Act effectuated the dissolution of the Williamsport Area Community College which Penn College succeeded. 24 P.S. § 2510-503. Penn College is

defined as "a nonprofit corporation organized and existing under the laws of the Commonwealth and is a wholly controlled affiliate of The Corporation For Penn State."  24 P.S. § 2510-503(5).  The Corporation For Penn State is a distinct corporate entity defined as "a wholly controlled affiliate of the Board of Trustees of The Pennsylvania State University."  24 P.S. § 2510-503(6).

Regarding the relationship between Penn State and Penn College, the Act recognizes Penn College as a state-related institution, and "an affiliate corporation of The Pennsylvania State University."  24 P.S. §§ 2510-503(8); 2510-504.  The Act provides Penn College "the authority to conduct educational programs consistent with the mission of The Pennsylvania State University as the Land Grant Institution of the Commonwealth of Pennsylvania."  24 P.S. § 2510-505.  It is also authorized to confer baccalaureate degrees, with certain statutorily specified limitations.  See id.  The Act affords Penn College "all the rights, powers, privileges and immunities," and is subject to all the duties and limitations of a typical Pennsylvania non-profit corporation.  24 P.S. § 2510-504(5).  Thus, Penn State and Penn College are distinct corporate entities subject to the traditional principles of applicable corporate law.

## II. DISCUSSION

### A. Legal Standards

1.      Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 662.  The standard seeks to eliminate those claims that do not present "enough" factual matter, assumed to be true, "to raise a reasonable expectation that discovery will reveal evidence" in support of the claims.  Twombly, 550 U.S. at 556.  Where a plaintiff fails to nudge his "claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id., 550 U.S. at 570.

To determine the adequacy of a complaint under this standard, a court should: (1) identify the elements of the claim(s); (2) review the complaint to strike conclusory allegations; and the, (3) consider whether the well-plead components of the complaint and evaluate whether all elements previously identified are sufficiently alleged. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).  All well-pleaded facts must be accepted as true at this juncture. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

### 2.     Piercing the Corporate Veil

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998) (internal quotations and citations omitted).  The United States Court of Appeals for the Third Circuit maintains that "mere ownership of a subsidiary does not justify the imposition of liability on the parent."  Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001).  "As a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship."  In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 341 n.44 (3d Cir. 2010).

"But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes." Bestfoods, 524 U.S. at 61.  This exception to the general rule may apply if "the party seeking to pierce the corporate veil on an alter-ego theory establishes that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its

separate existence was a mere sham." Culbreth v. Amosa, 898 F.2d 13, 14 (3d Cir. 1990). "The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . and usually determined on a case-by-case basis." Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003).

To discern whether the general rule of independent corporate personalities applies or whether a court should pierce the corporate veil under the circumstances, courts apply numerous tests in various contexts that consider myriad factors and bear sundry monikers.[2] In short, the law is muddled.

For example, in the context of hiring discrimination under Title VII of the Civil Rights Act of 1964, the Third Circuit articulated the following test:

> [W]e shall deem a parent and subsidiary a single employer when the parent has directed the subsidiary to perform the allegedly discriminatory act in question. By directing such an act, the parent disregards the separate corporate existence of the subsidiary and thus forfeits the right to be treated as a separate entity.

Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 86 (3d Cir. 2003).

Another veil-piercing test employed in the labor context, dubbed the

---

[2] For example, similar tests under the rubric of corporate veil-piercing are sometimes referred to alternatively as "the integrated enterprise test (also known as the single employer test), the alter ego test, and the mere instrumentality test," as well as the identity doctrine. Richardson v. CSS Indus., Inc., CIV.A. 08-3900, 2009 WL 2230761, *4 n.5 (E.D. Pa. Jul. 27, 2009).

"integrated enterprise test," examines "four labor-related characteristics of affiliated corporations: interrelations of operations; common management; centralized control of labor relations; and common ownership or financial control." Pearson, 247 F.3d at 486. While no single factor is dispositive, when the facts of a case are such that the two enterprises reach a sufficient degree of "sameness" under these factors, a parent may be held liable for a subsidiary's action. See id. "[T]he 'directness' of a parent's involvement . . . may be conceived as a sliding scale; if the parent has sufficiently overwhelmed its subsidiary in taking the challenged action, such a showing is sufficient to create liability; if the parent was involved to a lesser degree, there must be some demonstration" of other facts under the test or liability should not be imposed on the parent. Id. at 487.

Another example of a related formulation of a veil piercing test is dubbed the "mere instrumentality theory." See May v. Club Med Sales, Inc., 832 F. Supp. 937, 938 (E.D. Pa. 1993). To pierce the corporate veil under this theory, a plaintiff must prove: (1) that one corporation controlled another corporation to such a degree that the controlled corporation was a mere instrumentality of the other; (2) that the controlling corporation perpetrated some fraud or injustice through the controlled corporation; and, (3) that the plaintiff suffered an unjust loss or injury as a result. Id.

9

The common elements throughout these many veil piercing tests are two: (1) the parent or controlling corporation exercised a level of control over the subsidiary that was sufficiently pervasive; and, (2) some impropriety or injustice related to that unorthodox control that caused harm to a plaintiff.  The ultimate normative aspiration behind these tests is to ensure that the protections afforded by corporate law are not abused to perpetrate fraud or injustice.  When the necessary formalities accompanying those protections are not respected and injustice results, courts pierce the veil.  See, e.g., Bestfoods, 524 U.S. at 61.

There exists scant binding or persuasive authority directly on point to supply a particular test in the context of the facts of this case.  Accordingly, the Court applies these fundamental principles of corporate law to the Plaintiff's specific allegations to discern whether Plaintiff has alleged facts sufficient to survive Penn State's Motion to Dismiss on the corporate veil piercing theory.

 **B.** **Plaintiff's Claims**

  1. Plaintiff Did Not Alleged Facts Sufficient to Pierce Veil

The facts Plaintiff pled to establish the relationship between Penn State and Penn College in an attempt to impose liability on Penn State for his claims are as follows: that both Penn College and Penn State are named on the title page of the PA Program handbook distributed to Vacaflor (Compl., ¶ 38); that he was

terminated from the program by the terms of the Student Handbook that bore both Penn College and Penn State logos (Id., ¶ 91); that the letterhead of the Dean's termination letter to Vacaflor read "Pennsylvania College of Technology/PENNSTATE"[3] (Id. ¶ 92; Compl., Ex. D); that Plaintiff believed the PA Program degree would be issued by Penn State (Id. ¶ 16); and finally, that the relevant statute defines Penn College as "a wholly controlled affiliate of The Corporation For Penn State." 24 P.S. § 2510-503(5); Compl., ¶ 16. Plaintiff's Amended Complaint alleges numerous discriminatory acts performed by the Penn College Defendants, but does not allege a single discriminatory action by any Penn State official, or any contact whatsoever between Penn State and the Plaintiff. The Plaintiff seeks to implicate Penn State solely by piercing the corporate veil.

The Court first addresses the statutory language denoting Penn College as "a wholly controlled affiliate of The Corporation For Penn State."[4] 24 P.S. § 2510-503(5). Penn College operates separately from Penn State, under the direction of its own Board of Directors and is own bylaws. 24 P.S. § 2510-506. It receives its

---

[3] The letterhead had a Williamsport, Pennsylvania mailing address and a Penn College website address. See Compl., Ex. D.

[4] Notable, the statute defines The Corporation For Penn State as "a wholly controlled affiliate of the Board of Trustees of The Pennsylvania State University." 24 P.S. § 2510-503(6). The Plaintiff's Amended Complaint does not reference The Corporation For Penn State or articulate the nature of the relationships between these distinct corporate entities.

own funding appropriation from the Commonwealth of Pennsylvania, which is "a separate line item of the annual appropriation to [Penn State]." 24 P.S. § 2510-504(1).  Consequently, while the statute designates Penn College as "a wholly controlled affiliate," that control is typical of the usual parent-subsidiary corporate relationship that respects the traditional rule of independent corporate personality.  See, e.g., Bestfoods, 524 U.S. at 61.  This statutory designation and accompanying attributes do not operate so as to disregard the corporate form and pierce the veil between the entities.

Next, the fact that Penn State's name and logo appearing on the PA Program handbook and the Penn College Dean's letterhead does not establish pervasive control sufficient to pierce the corporate veil.  The mere appearance of a parent corporation's logo with the subsidiary corporation's in a common marketing image does not demonstrate the level of control sufficient to render the subsidiary the alter ego of the parent corporation.  See Pearson, 247 F.3d at 485 ("[C]ourts have refused to pierce the veil when subsidiary corporations use the trade name of the parent . . . ."); In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig., 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) ("The common marketing image and joint use of trademarked logos fail to render [one corporation] an alter ego of [another corporation]."), aff'd 683 F.3d 462 (3d Cir. 2012).  Plaintiff did not allege

that the Dean had any other affiliation with Penn State, that Penn State asserted any modicum of control over the Dean and her actions, or allege any contact at all between the Penn College Dean and a Penn State official. Allegations such as those would suggest some level of control—not the mere appearance of the logos in a common marketing scheme. See, e.g., McGhean v. AF & L Ins. Co., CIV.A. 09-CV-01792-T, 2009 WL 3172763, *3–4 (E.D. Pa. Oct. 2, 2009) ("[Plaintiff] has not alleged any facts showing that as between [the two corporate affiliates] there was functional integration of the operations of the parent and subsidiary . . . .").

Concerning the fact that the Plaintiff "believed and averred" that the degree would be conferred by Penn State upon successful completion of the PA Program, the Plaintiff has not pled any factual support for the plausibility of this claim. Compl., ¶ 16. A court will not dismiss a plaintiff's claims "based on the allegations being pled upon information and belief, *so long as there is a proper factual basis asserted to support the beliefs pled*." Wright v. Lehigh Valley Hosp. and Health Network, CIV.A. 10-431, 2011 WL 2550361, *3 (E.D. Pa. June 23, 2011) (internal quotations and citation omitted) (emphasis added). Here, the Plaintiff has not alleged a single fact to support this belief. Furthermore, the PA Program handbook states that "Pennsylvania College of Technology's Physician Assistant Program will graduate professionals who possess the knowledge and

13

skills necessary to excel in physician assistant practice." Compl., Ex. B, at 8. Accordingly, Plaintiff's unsupported belief and averment confers little weight as a factor demonstrating pervasive control sufficient to pierce the corporate veil.

Finally, Plaintiff argues that these allegations should be sufficient to proceed to discovery with Penn State as a Defendant under this corporate veil piercing theory. Plaintiff argues it would be "inapt" to grant Penn State's Motion to Dismiss because of the "largely non-existent record." See Pl.'s Br. Opp'n , Aug. 23, 2013, ECF No. 25 (quoting Releford v. Pennsylvania State Univ., 10-CV-1621, 2011 WL 900946, *10 (M.D. Pa. Mar. 14, 2011)).[5]

Be that as it may, it is abundantly clear that "[t]he Supreme Court precludes the use of even limited discovery to overcome a pleading insufficiency." Essex Ins. Co. v. Miles, 2010 WL 5069871, *3 (E.D. Pa. Dec. 3, 2010) (Bartle, C.J.). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678–79. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679; see also Richardson v. CSS Indus., Inc., CIV.A.08-3900, 2009 WL 2230761 (E.D. Pa. July 27, 2009) ("[B]ecause Plaintiff's Complaint is devoid of

---

[5] Hoping to proceed to discovery against Penn State, Plaintiff cites to a recent case involving the same institutional defendants in which the Plaintiff survived Penn State's motion to dismiss under different factual and pleading circumstances. See Releford v. Pennsylvania State Univ., 10-CV-1621, 2011 WL 900946 (M.D. Pa. Mar. 14, 2011).

14

any facts that could attach liability to [the parent corporation], Plaintiff is not entitled to discovery.").

The Plaintiff has not alleged facts sufficient for the Court to disregard the default rules of separate corporate personalities and pierce the corporate veil. Consequently, the Court evaluates the elements of Plaintiff's claims against Penn State in light of the facts he has alleged.

2. <u>Plaintiff Failed to State a Plausible Equal Protection Claim Against Penn State</u>

Plaintiff's first claim alleged against Penn State asserts racial and national origin discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983. To state a claim under § 1983, the Plaintiff must establish that the defendant acted under color of state law to deprive the plaintiff a right secured by the Constitution. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

Plaintiff's Amended Complaint details specific factual allegations that state plausible claims as to the Penn College Defendants. The Plaintiff does not, however, allege a single act performed by a direct employee or representative of Penn State. The name of a direct Penn State employee or representative does not appear in the Amended Complaint. Because the "mere ownership of a subsidiary does not justify the imposition of liability on the parent," and the Plaintiff has

failed to plead facts specific to Penn State to implicate the institution, his § 1983 claim against Penn State is dismissed. Pearson, 247 F.3d at 484.

        3.        Plaintiff Failed to State a Plausible Title VI Claims Against Penn State

In Counts V and VI of the Amended Complaint, Plaintiff alleges that both Penn College and Penn State violated Title VI of the Civil Rights Act of 1964, because he suffered discrimination and a hostile environment based on his race and national origin. The Plaintiff fails to state a plausible claim against Penn State on either of these Counts.

To establish a Title VI discrimination claim, the Plaintiff must show that Penn State subjected him to intentional race or national origin discrimination under one of its programs or activities. 42 U.S.C. § 2000d; Alexander v. Sandoval, 532 U.S. 275, 280 (2001). Like the §1983 claim, Plaintiff has alleged numerous acts that state a plausible claim against the Penn College Defendants, but has not alleged any interaction with a single employee or representative of Penn State. Nor has Plaintiff alleged Penn State was even aware of his racial and national origin status. Nowhere does Plaintiff state facts such that Penn State is implicated by a plausible claim of intentional discrimination.

To establish a Title VI hostile environment claim, Plaintiff is required to show that (1) he was subjected to severe and pervasive harassment on the basis of

his race or national origin, and (2) Penn State acted with deliberate indifference to the harassment.  See Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648–52 (1999) (defining a hostile educational environment under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*); Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 521 n.2 (3d Cir. 2011) ("[The United States Court of Appeals for the Third Circuit] construes Titles VI and IX similarly because they use parallel language.").

Again, Plaintiff's factual allegations stating a plausible claim on this Count are specific to Penn College and Penn College employees.  The Plaintiff does not allege a single act or even actor directly attributable to Penn State.  Consequently, Plaintiff fails to state a plausible claim against Penn State under Title VI.

    4.    Plaintiff Did Not Plausibly Plead Breach of Contract Claim Against Penn State

Count VII of Plaintiff's Amended Compleaint attempts to state a breach of contract claim against both Penn College and Penn State.  Under Pennsylvania law, a breach of contract claim requires a plaintiff to establish: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and, (3) resulting damages.  Lackner v. Glosser, 892 A.2d 21, 30 (Pa. Super. Ct. 2006).  The Plaintiff's claim against Penn State fails because he did not plausibly establish the existence of a contract between Penn State and himself.

Plaintiff makes three principal averments to support his allegation of a contract between himself and Penn State: (1) that both Penn College and Penn State (as "the institutional Defendants") distributed the PA Program manual; (2) that the PA Program manual bears both Penn College and Penn State's logo; and (3) that he "believed and averred" that Penn State would have issued his degree if he successfully completed the program.

First, Plaintiff's assertion that Penn State played a role in distributing the PA Program manual is not supported by any facts aside from the logo on the cover. Plaintiff does not allege that any Penn State representative distributed the manual, had any control over the content of the manual, or any control over the parties that did distribute the manual. Furthermore, review of the manual demonstrates that it is a Penn College document. The introduction sets forth Penn College's Philosophy and Mission Statement and is signed by Penn College's PA faculty and Staff. Compl., Ex B., at 2, 5–6.

Furthermore, it is already established that merely presenting a parent corporation's logo with a subsidiary's in a common marketing scheme does not rise to the level of control necessary to pierce the corporate veil. See Pearson, 247 F.3d at 485. Nor is it sufficient to impute liability on Penn State for a contract between Penn College and the Plaintiff absent other indications that Penn State was

plausibly a party to a contract, which Plaintiff does not supply.

Finally, as previously discussed, Plaintiff's "belief" that his degree would be conferred by Penn State without any factual basis to support that belief does not nudge this claim from the realm of the possible to the province of plausibility. See Wright, 2011 WL 2550361 at *3. Plaintiff alleges no other theory aside from a flawed attempt to pierce the corporate veil or an unpersuasive attempt to establish a contract by conclusory and largely unsupported averments. Accordingly, Plaintiff's breach of contract claim against Penn State is dismissed.

### III. CONCLUSION

Plaintiff's Amended Complaint attempts to impose liability on Penn State for the actions of its subsidiary, Penn College, largely by piercing the corporate veil between the two entities. Plaintiff did not allege facts sufficient to overcome the traditional rule of distinct corporate personalities and, therefore, the Court does not pierce the corporate veil. Accordingly, Plaintiff did not plead plausible claims for any of its allegations against Penn State. The claims against Penn State are dismissed and Penn State is correspondingly dismissed from this action.

An appropriate Order follows.

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge